**GULF OIL CORPORATION, Plaintiff,**

v.

**William E. SIMON, Administrator of the Federal Energy Office, Defendant.**

**Civ. A. No. 74–286.**

United States District Court, District of Columbia.

April 8, 1974.

Jesse P. Luton, Jr., and Catherine C. McCulley, Houston, Tex., Francis J. Walsh, Washington, D. C., for plaintiff.

Paul T. Michael, Dept. of Justice, Washington, D. C., for defendant.

Edward Jason Dryer, Washington, D. C., for Independent Refiners Ass'n of America.

## MEMORANDUM OPINION

PARKER, District Judge.

Plaintiff, Gulf Oil Corporation (Gulf), has filed a First Amended Original Complaint for Declaratory Judgment, Injunction, and Equitable Relief (Amended Complaint) alleging that certain regulations promulgated by the defendant, William E. Simon, as administrator of the Federal Energy Office (FEO), pursuant to the Emergency Petroleum Allocation Act of 1973 (Allocation Act),[1] must be set aside on the grounds that they violate the provisions of the National Environmental Policy Act (NEPA).[2] Specifically, it is alleged that the defendant failed to prepare and consider an environmental impact statement in connection with the regulations.

Plaintiff has moved for summary judgment on this issue and defendant has countered with a motion to dismiss, or in the alternative, for summary judgment. For the reasons set forth below the Court denies the plaintiff's motion and grants summary judgment in favor of the defendant.

In its original complaint, filed on February 14, 1974, Gulf contended that regulations issued by the FEO[3] establishing mandatory crude oil allocation among refiners, and pursuant to which Gulf was required to sell crude oil to several of its competitors, were "unfair, inequitable, arbitrary, discriminatory" and therefore invalid.[4] Plaintiff also challenged in the original complaint a ruling of the FEO[5] relating to supplier-purchaser relationships for petroleum products, including motor gasoline, which allegedly resulted in improper interference with a dealer divestment pro-

gram Gulf had undertaken. The ruling was claimed to be in excess of agency authority.

After full briefing and oral argument by counsel for the parties on plaintiff's motion for a preliminary injunction and cross motions for summary judgment a ruling was announced in open Court on March 14, 1974, denying plaintiff's motions and granting summary judgment for the defendant on the original complaint.[6] At that time plaintiff represented to the Court that it had filed an amended complaint introducing for the first time the NEPA issue. On March 19, 1974 the Court formally entered the Order of Partial Summary judgment denying relief to plaintiff which contained the findings, *inter alia,* that the challenged regulations were not in excess of agency authority and that Gulf had not exhausted its administrative remedies as to Ruling 1974–3.

In the amended Complaint the thrust of Gulf's claim is that the oil allocation program represents major federal action which will necessarily have a significant effect upon the quality of the human environment "by shifting the refining of crude oil from larger and more complex and efficient refineries having the capability of refining a wide range of petroleum products, such as motor gasoline, jet fuel, petrochemical feedstocks, and other petroleum products, required to meet environmental standards and needs, to smaller, less efficient refineries not capable of refining such petroleum products, and further discourage the importation in the United States of crude oil required by major refiners such as Gulf to refine such petroleum products required to meet and maintain these environmental standards."[7]

---

1. Pub.L. 93–159.

2. 42 U.S.C.A. § 4321 et seq.

3. 39 Fed.Reg. 1924 et seq. (Jan. 14, 1974).

4. Complaint ¶ 3.

5. Ruling 1974–3.

6. The Independent Refiners Association of America was granted leave to appear *amicus*

*curiae* and filed a brief urging the Court to uphold the FEO regulations.

7. Amended Complaint ¶ 1.
   The Court feels compelled to touch upon an aspect of this matter which has not been raised by either litigant, namely Gulf's standing to raise the NEPA challenge. Section 5(a) of the Allocation Act incorporates the jurisdictional and judicial review provi-

Simply stated the government's defense is that the urgent nature of the oil allocation system, as evidenced by the short time span within which the FEO was required to act, relieves the defendant from NEPA's procedural obligations.

While it is widely acknowledged that the "action forcing" requirements of NEPA (lying at the heart of which is the preparation, circulation and consideration of an impact statement) are generally mandatory in nature and are not easily avoided,[8] the Court is nonetheless unpersuaded by plaintiff's contentions.

Counsel for the parties have not furnished, and this Court has not found any case in which the precise question of NEPA applicability to emergency FEO action is specifically addressed. The case of Cohen v. Price Commission, 337 F.Supp. 1236 (S.D.N.Y.1972), however, offers considerable guidance. In that proceeding, NEPA was invoked to contest the validity of the authorization by the Price Commission, pursuant to the Economic Stabilization Act of 1970, of a fare increase on New York City subways and buses. The matter came before District Judge Weinfeld on plaintiffs' application for a preliminary injunction, and although carefully ruling only that the

heavy burden required for the granting of such temporary relief had not been satisfied, the Court's analysis of one crucial criterion—likelihood of success on the merits—is extremely enlightening on the claim Gulf now pursues. Judge Weinfeld significantly acknowledged the urgent and pressing responsibilities fostered upon the Price Commission in its attempt to stabilize the economy:

> "There can be no question that if the purposes of the Economic Stabilization Act are to be achieved, the President or his delegated representatives must be free to act with promptness and dispatch." 337 F.Supp. at 1240.

After then noting that the requirements of NEPA called for more deliberate and time consuming action the Cohen Court expressed doubt that Congress could have intended the Price Commission to be bound and potentially stymied by the mandates of NEPA. It was cautioned that such compliance might "render impossible the achievement of that program." 337 F.Supp. at 1242.

The Cohen case is sufficiently analogous to the matter sub judice and this Court adopts its reasoning as the basis for a final determination. Section 4(a) of the Allocation Act obligated the FEO to promulgate mandatory oil allocation

---

sions of the Economic Stabilization Act of 1970, as amended. Pub.L. 92–210. The latter Act, in § 210, provides that "[a]ny person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States . . . ." The following section, entitled Judicial Review, provides in subsection (d)(1) that a district court may set aside regulations which are found to be "in excess of the agency's authority, . . . arbitrary or capricious, or . . . otherwise unlawful under the criteria set forth in § 706(2) of Title 5, United States Code . . . ." It was upon this statutory jurisdictional grant that Gulf sought relief in its original complaint and the Court reviewed the claim in light of the criteria described therein. The Court had specifically ruled that the regulations were not in excess of agency authority. There could be no question that Gulf, as a directly affected producer and refiner, had standing

to challenge the rational basis of the promulgations. As to the NEPA issue, however, the Court questions whether or not the traditional Administrative Procedure Act standing requirements must be independently established. See, e. g., Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); United States v. Students Challenging Regulatory Agency Procedure (SCRAP), 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). Assuming an affirmative answer, and on this no judgment is passed, it is doubtful that Gulf has plead sufficient facts to satisfy the tests established in the above cited Supreme Court rulings. However, in view of the important substantive issues raised by the amended complaint and the fact that the standing issue had not been briefed, the Court has merely noted this procedural question and has ruled on the merits.

8. See Calvert Cliff's Coordinating Committee v. United States Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971).

regulations within 15 days after the emergency legislation's enactment. Fifteen days thereafter the regulations became effective. Establishment of such a deadline makes it abundantly clear that Congress had intended the FEO administrator to proceed expeditiously. Compliance with NEPA, on the other hand, would disarm the FEO of its ability and authority to take necessary action with the required degree of speed.[9] In light of the Congressional demand that immediate measures be adopted the Court feels that the inherent tension between NEPA and the Allocation Act, at least as it involves the specific regulations here in issue, must be resolved on balance with a finding that the FEO was not required to draft an environmental impact statement. Gulf has sought much comfort in certain guidelines issued by the Council on Environmental Quality (CEQ)[10] which require that when an agency finds it necessary to take action "without observing the provisions of these guidelines concerning minimum periods for agency review and advance availability of environmental statements, the Federal agency proposing to take the action should consult with the Council about alternative arrangements." 38 Fed.Reg. 20566. This provision, however, which pertains to the circulation of drafts, is apparently applicable to emergency action needed *after* an impact statement has been compiled. It does not affect time and effort expended in its actual preparation. In light of the exhaustive analytical content required of impact statements,[11] it would be illogical, indeed virtually impossible, to demand a statement in this instance.

The Court will enter an Order denying plaintiff's motion for summary judgment, granting the government's motion for summary judgment and dismissing the amended complaint.

---

9. For example, NEPA guidelines, established by the Council on Environmental Quality, 38 Fed.Reg. 20556, provide for time lags of 90 and 30 days between the preparation and circulation of draft and final impact statements and the institution of administrative action subject thereto. This, of course, does not reflect the amount of time needed to actually prepare the drafts.

10. The CEQ was established under NEPA to implement the Act's goals. Pursuant to authority found in 35 Fed.Reg. 4247 the CEQ has issued guidelines for the preparation of impact statements.

11. *See* Calvert Cliffs' Coordinating Committee v. United States Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971).